## CLOUGH v. NEWS PUB. CO.
### No. 9853.

Court of Civil Appeals of Texas. Galveston.
March 16, 1933.

Geo. G. Clough, of Houston, for appellant.

Frank S. Anderson, of Galveston, for appellee.

LANE, Justice.

G. Roy Clough brought this suit against the News Publishing Company, a corporation, to recover for libel.

Plaintiff alleged that defendant was, on the 29th day of July, 1930, the publisher of a newspaper known as the Galveston News, and that on said date it printed and published a false, defamatory, and malicious libel of and concerning plaintiff, in words as follows:

"RADIO STATION PURLOINS COPYRIGHTED ELECTION RETURNS,

DENOUNCES PAPERS FOR 'INTERFERENCE.'

"Saturday night was a memorable occasion for station KFLX, owned and operated by George Roy Clough.

"The enterprising Mr. Clough decided it would be a fine thing to broadcast returns of the democratic primary election. There was only one serious hitch in the scheme. Mr. Clough had no election returns and no way of getting them except by methods frowned upon in the best radio circles. But that didn't worry him long. He knew that The News, as usual, would project returns upon a screen opposite its building. What could be simpler than to copy these returns, telephone them to the station for broadcasting and make a trusting public believe that station KFLX was the mouthpiece of a vast organization covering the vote in Texas' 253 counties?

"Not to be annoyed by such a trifling detail as asking The News' permission, the management of KFLX arranged to proceed without permission. But here unexpected difficulties arose. Mr. Clough tried to arrange for an observation post and telephone station in Perusina's café, adjoining The News, and was highly incensed when permission was refused. But station KFLX was not to be balked as easily as that. If several thousand Galvestonians gathered in Mechanic street for The News' 'Election party' could view the election returns, what was to prevent station KFLX from purloining them and broadcasting them as the fruit of its own enterprise?

"Two men climbed to the top of a delivery truck, copied the returns as they were flashed on the screen and handed the slips to waiting runners who relayed them to the station—either directly or by telephone. Throughout this performance a policeman stood by the truck, though the reason for this precaution was not apparent, since no one tried to interfere.

"For some reason, possibly because he wasn't particularly proud of his performance, Mr. Clough became tremendously aggrieved at The News and worked himself into a fine rage over the paper's efforts to 'interfere' with the public service performed by station KFLX. In the intervals of broadcasting purloined election returns, the announcer directed a torrent of abuse at The News, accusing it of employing underhanded methods to defeat the broadcast, Station KFLX, the announcer proclaimed, had gone to large expense to get those returns and proposed to broadcast them in spite of all The News could do.

"Possibly the employment of men to 'lift' and relay the returns was a large expense to the station. But in obtaining the returns honestly The News did incur a considerable expense, none of which was contributed by station KFLX. Returns for the state were collected by the Texas election bureau, an organization maintained by Texas newspapers, and the only organization engaged in that work. It is financed solely by assessments against member newspapers, and consists of correspondents in every county, dozens of tabu-

lators in the central office at Dallas, and a net work of leased telegraph wires serving the member papers. It cost the Texas election bureau approximately $20,000 to collect and tabulate the vote in Saturday's election, and of this sum The Galveston News-Tribune paid about $1,000.

## "MATTERS COPYRIGHTED.

"Returns furnished by the Texas election bureau are protected by copyright. In the contract between members, radio broadcasting is expressly forbidden. This is done in fairness to member papers which do not own radio stations and is respected by the eight reputable papers which operate their own radio stations. So, even if station KFLX had bothered to ask permission to broadcast Texas election bureau returns, The News would have been prevented by its contract from giving it however much the paper might have wished to accommodate the gracious Mr. Clough. Member papers are also obliged to prevent, if possible, the unauthorized broadcasting of returns. But Saturday night The News was too busy with the election to seek an injunction or invoke other legal means to circumvent the cheap piracy.

"What's a little thing like a copyright to station KFLX, the voice of Raffles, broadcasting by sufferance of the federal radio commission with tiresome frequency over an elastic wave length?"

Plaintiff further alleged that the statement made in such publication that plaintiff "purloined" the returns described therein is false, and was known to be false at the time it was made; that it was made maliciously for the purpose of injuring plaintiff. He denied that the property which the defendant stated was exclusively that of the defendant was in fact such, in that defendant cannot have a property right in matters of public information; he alleged that such information was not copyright matters, as stated in the publication; that the charge that plaintiff "purloined" property of defendant was meant and understood by the readers of said article to mean that plaintiff was a thief, and was guilty of theft; that the Galveston News has a large circulation within and out of the state of Texas, and is circulated in practically every county in the state; "that the publication and circulation of said false, defamatory and malicious libel has caused the plaintiff great loss of peace of mind, shame and humiliation; that he was raised in Galveston County where he has lived for more than 25 years; that said libel has injured him in his business as operating a Broadcasting Radio Station, and has caused many persons to refrain from employing his said station, to his corresponding loss and damage."

He prays that upon final hearing he have judgment against defendant for $15,000 actual damages and for $10,000 exemplary damages.

Defendant answered by general demurrer and special exceptions. It admits the publication of the article set forth in the first paragraph of plaintiff's petition, but denies each and every other allegation in the petition. It alleged that the matters and things contained in the publication are true.

The trial court sustained the general demurrer of the defendant and dismissed plaintiff's suit. From the judgment of dismissal the plaintiff has appealed.

██ For reversal of the judgment, appellant contends that the court erred in holding that plaintiff's petition failed to state a cause of action and upon such holding sustaining defendant's general demurrer addressed thereto; in that, in the publication alleged as constituting libel charges, appellant is stated to have "purloined" copyright matter exclusively the property of the defendant, which is in effect a charge that appellant is a thief, and in that such publication subjects appellant to public hatred, contempt and ridicule, and financial injury, and impeaches his honesty, integrity, and reputation.

We sustain appellant's contention. The heading of the publication, as shown in capital letters, is as follows: "RADIO STATION PURLOINS COPYRIGHTED ELECTION RETURNS, DENOUNCES PAPERS FOR 'INTERFERENCE.' "

In such published article it is charged, in effect, that in the interval of broadcasting Mr. Clough "purloined" election returns. In another part of the article it is stated as follows:

"But Saturday night The News was too busy with the election to seek an injunction or invoke other legal means to circumvent the cheap piracy.

"What's a little thing like a copyright to station KFLX (station owned by appellant), the voice of Raffles, broadcasting by sufferance of the federal radio commission with tiresome frequency over an elastic wavelength."

Unquestionably the article charges that appellant "purloined" the election returns gathered for the News and other papers and publications, and that in doing such he was guilty of piracy, and in such article appellant is likened to Raffles, the noted character generally known as a polite thief.

Appellee contends that the word "purloin," as used in the published article complained of, cannot be construed as meaning "stealing." To such contention we cannot agree.

In Zell's Encyclopedia the word "purloin" is defined: (1) To remove; (2) to remove for one's self; (3) to steal; (4) to take by theft; (5) to take by plagiarism; and (6) to steal from books or manuscripts.

In Standard Dictionary of English Language: (1) As the act of thieving; (2) stealing, same as larceny.

In Century Dictionary: To take by theft.

In New Universities Dictionary: To steal.

So there can be no reasonable contention that to charge one with purloining the property of another is not a charge that such person stole such property and that he was guilty of theft. Not only does the article charge appellant with purloining (stealing), but it also charges him with piracy, and likens him to the thief, Raffles.

The charges made by the article, whether falsely or truthfully made, would no doubt subject and expose appellant to contempt and ridicule and impeach his honesty, integrity, and reputation. If, however, the charges, upon another trial, are shown to be true, appellant cannot recover. Such issue, however, is for the determination of the court or jury upon the evidence which may be introduced upon another trial.

Having reached the conclusion that the court erred in sustaining the general demurrer and dismissing the suit, it becomes our duty to reverse the judgment and remand the cause, and it is accordingly so ordered.

Reversed and remanded.